IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | 1:15-CV-2677-LMM |
| APPROXIMATELY 8,671,456,050 ) | |
| IN IRAQI DINAR, et al. ) | |

**REPLY OF CLAIMANTS RHAME AND SHAW TO
GOVERNMENT'S RESPONSE TO CLAIMANTS'
MOTION FOR USE OF SEIZED FUNDS TO PAY OFF
MORTGAGE ON SEIZED PROPERTY**

The government's response to Claimants' request to use seized funds to pay off a mortgage on real property that is subject to forfeiture begins with the proposition that it is "statutorily impermissible" to release seized funds and that the request by the Claimants is also barred by virtue of the fact that both civil actions are stayed. Neither argument is meritorious:

(1) Though 18 USC § 983(f) bars the release of seized funds to claimants, it does not bar this court from directing the government to preserve the value of seized funds and property subject to forfeiture by using seized funds to reduce interest payments, as well as to eliminate other fees and costs that are causing the value of the seized "estate" to shrink;

1

(2) While there is a litigation stay that was consented to by the government and the Claimants, it was expressly envisioned by both parties that it was important to maintain the value of the seized estate and that occasions would arise in which the stay would be suspended in order to enter an Order directing that certain assets be sold, transferred, or otherwise used in a transaction that was designed to ensure that the estate is not reduced in value.  The purpose of the limited "consent exception" to the stay was clear: to preserve the value of an asset. The fact that the government will not consent to the use of the seized funds in this case may require that the stay be temporarily lifted, but it certainly does not create an insurmountable barrier to intelligently maintaining the status quo of the estate while the criminal case proceeds.

I. **Title 18, U.C.S. § 983(f) Bars the Release of Seized Funds to a Claimant But Does not Bar the Use of Seized Funds to Maintain the Status Quo of the Seized Estate.**

When the Civil Asset Forfeiture Reform Act was enacted, to ameliorate the harsh consequences of pretrial seizures – a phenomenon that is surely antithetical to the notion of Due Process – Congress sought to prevent irremediable harm to claimants who might ultimately prevail in the case.  Claimants might win the ultimate battle over the forfeitability of an asset, yet the cost of waging this battle might be pointless if for years the government is permitted to deprive the Claimant

of possession of the asset. Thus, Congress included 18 U.S.C. § 983, which authorizes a Claimant to seek the return of a seized asset prior to the conclusion of the forfeiture proceeding. In order to invoke § 983, the claimant must make several showings, all of which demonstrate that the purpose of this provision is to enable the claimant to take possession of the asset prior to the trial on the merits of the forfeiture case:

**(f) Release Of Seized Property.--**
**(1)** A claimant under subsection (a) is entitled to immediate release of seized property if--
**(A)** the claimant has a possessory interest in the property;
**(B)** the claimant has sufficient ties to the community to provide assurance that *the property will be available at the time of the trial*;
**(C)** the continued possession by the Government pending the final disposition of forfeiture proceedings will *cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless*;
**(D)** the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred *if it is returned to the claimant* during the pendency of the proceeding; and
**(E)** none of the conditions set forth in paragraph (8) applies.

***

**(6)** If--
**(A)** a petition is filed under paragraph (3); and
**(B)** the claimant demonstrates that the requirements of paragraph (1) have been met, the district court shall order that the property *be returned to the claimant*, pending completion of proceedings by the Government to obtain forfeiture of the property.
**(7)** If the court grants a petition under paragraph (3)--
**(A)** *the court may enter any order necessary to ensure that the value of the property is maintained while the forfeiture action is pending*, including--
**(i)** permitting the inspection, photographing, and inventory of the property;

**(ii)** fixing a bond in accordance with rule E(5) of the Supplemental Rules for Certain Admiralty and Maritime Claims; and
**(iii)** requiring the claimant to obtain or maintain insurance on the subject property; and
**(B)** the Government may place a lien against the property or file a lis pendens to ensure that the property is not transferred to another person.
**(8)** This subsection shall not apply if the seized property--
**(A)** is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized;
**(B)** is to be used as evidence of a violation of the law;
**(C)** by reason of design or other characteristic, is particularly suited for use in illegal activities; or
**(D)** is likely to be used to commit additional criminal acts if returned to the claimant.

The intent of Congress in passing this statute is unmistakable: in certain situations, a claimant facing a hardship may seek the return of an asset (a car needed for work; tools needed to carry on a business). Congress expressly provided that in this situation, as noted in the emphasized portions above, the asset would be transferred from the government to the Claimant. Congress also stressed that the Claimant must show that the value of the asset will not diminish pending the completion of the litigation.

The government is correct that a Claimant may not seek the return of currency or any monetary instrument pending the completion of the litigation. In other words, § 983 does not apply if the asset the Claimant seeks to take possession of pending the outcome of the litigation is "money."

4

The Claimants in this case are *not* seeking the return of the seized funds pursuant to 18 U.S.C. § 983.  Nowhere in Claimants' motion did the Claimants cite § 983 as the basis for the Motion.  The reason is simple: the Claimants are not seeking to take possession of the money.  Nor are they asking that the money be transferred to an asset that is currently free from the government's restraint.  The Claimants are asking simply that seized funds be used to pay off a mortgage on property that is *also* subject to forfeiture.  The mortgage at Yards at Noda matured in January of this year and since then the government has refused to pay off the note.

Moreover, the Claimants have agreed – and said so in their Motion – that when the airplane sells that is the subject of the Consent Order in Doc. #200, the proceeds of that sale will be used to replenish the seized funds that will be used to pay the mortgage at Yards at Noda.

We can't state it more simply: The Claimants are seeking to stop the hemorrhaging of increased default interest payments (and the acceleration of the note) by using seized funds to pay off the mortgage on property that the government has claimed as an asset that is also subject to forfeiture.  And the request is only temporary: as soon as the airplane sells, the proceeds will immediately be used to replace the seized funds that are the subject of this motion.

There is nothing in § 983 that bars the use of seized funds (and seized assets) to pay for maintenance of a forfeiture asset. And the government is aware of that because the government has already agreed to use seized assets for such purposes in the Consent Orders that have been entered (Doc. ## 99. 122. 126. 138. 147). At no time did the government insist that these transfers were in violation of § 983(f).[1] At not time did the government suggest that the court was violating § 983(f). For good reason. Such transfers, whether by consent of the parties, or by Order of the court in an adversarial context, do not implicate § 983(f).

Because Claimants' motion is not based on § 983(f), there was no need to follow the procedures envisioned in § 983(f)(2) and there was no need to make any of the showings required in § 983(f)(1)(A) – (E). There was no need for the Claimants to prove that they are suffering from hardship and there was no need for the Claimants to show that the asset would not diminish in value. In fact, the assets under control of the government will *increase* in value, because exorbitant interest payments and default payments will no longer be paid. The Yards at Noda development will be free and clear of liens. How can the government protest that

---

[1] In fact, the government previously agreed that seized funds could be used to make a prior payment at Yards at Noda (Doc. #126, 147). At that time, the government did not indicate that this violated § 983.

6

real estate that it seeks to forfeit will now be debt-free and not subject to any claim by Wells Fargo?[2]

The government's protestation that the Claimants have failed to make an adequate showing that the risk of the money being lost is also curious.  The Claimants are not asking that the money be returned to them.  They are asking that it be used to pay off a mortgage on property that the government has included in the forfeiture complaint.  Claimants cannot borrow any additional money using Yards at Noda as collateral.  So the money, being spent on that development, is essentially going straight to the government's forfeiture estate.  If – a doubtful contingency – the government prevails in this forfeiture case, the government will have free and clear property at Yards at Noda.  The seized funds will be depleted, but the debt on the property at Yards at Noda will be reduced by the exact same amount. Dollar for dollar.  Not a penny is at risk.  The seized funds in the stock market are just as likely to diminish in value as the real estate at Yards at Noda is likely to reduce in value.  (The Claimants are prepared to show at a hearing, if necessary, that the money used to pay off the mortgage will enhance the value of

---

[2] It is somewhat bizarre that the government actually suggests that Claimants should use their own "free and clear" money to pay off the Wells Fargo note at Yards at Noda (Doc. #219 at 15-16). Why does it make any sense for Claimants to use money that is *not* subject to seizure to pay off a loan on real estate that the government has expressed an intent to forfeit?  The Claimants have always paid their taxes, but volunteering to make contributions to an asset that the government seeks to forfeit is irrational.

the real estate at Yards at Noda which is a development that has virtually no risk of diminishing in value).

For the foregoing reasons, none of the cases cited in the government's brief are relevant. This is not a § 983(f) motion. The money is not destined for the Claimants, but simply for a mortgage payment on property that is subject to the government's forfeiture complaint and the criminal indictment's forfeiture provisions. The money will simply go from one government hand to the other. And the exorbitant interest payments will not be going down the drain in the meantime.[3]

**2. The Consent Stay Does Not Prevent the Court from Insisting that The Government Preserve the Value of the Seized Assets**

Both parties agreed to stay the civil forfeiture cases pending the completion of the criminal case. This is a common agreement that bars the parties from taking discovery that would disrupt the orderly progress of the criminal case. But in Claimants' counsel experience, such a stay is *never* designed to enable the government to mismanage the assets that have been seized without any interference from the Claimants. The government does not seriously suggest otherwise in this case. In fact, *every* case cited by the government in its brief

---

[3] Wells Fargo has also advised Claimants that if the Mortgage payment is not paid in full in the next 30 days, the entire note will be accelerated and *all rents and loan payments that are due to the Claimants from the property will be seized*. Thus, the government's procrastination in paying the mortgage payment that was due in January will result in the Claimants' loss of rents to which they are entitled on real estate prior to the completion of the forfeiture case.

explains that the purpose of a stay is to prevent the initiation of discovery by either party that would impair the criminal case.  To the extent that the government fears that an evidentiary hearing will be necessary to determine whether the § 983(f) factors have been satisfied, this is a fear that is belied by the fact that the Claimants are not relying on § 983(f), so none of those factors will be the subject of a hearing, because the Claimants are not requesting the return of the funds.

Claimants are not seeking to depose anybody, or to file interrogatories, or to file Requests for Admission.  There is nothing about this request that will interfere with the orderly progress of the criminal case.  All that will be accomplished will be the preservation of the assets that are the subject of this case.  As one court observed in a different context:  "Where a disputed *res* is capable of being put to use for someone, it makes no sense whatsoever that a pile of dollar bills should be left doing no good for anyone." *United States v. $277,000 U.S. Currency*, 69 F.3d 1491, 1494 (9th Cir. 1995).

The forfeiture statute expressly provides that the court may enter such an order, even after a stay has been entered: 18 U.S.C. § 981(g)(6).

> The plain text of § 981(g)(6) states that a district court "shall enter any order necessary to preserve the value of the property or to protect the rights of lienholders or other persons with an interest in the property while the stay is in effect." § 981(g)(6); *cf. United States v. Certain Real Prop., Located at 317 Nick Fitchard Rd.,* 579 F.3d 1315, 1321 & n. 7 (11th Cir.2009) (concluding that § 981 provides protection to property claimants, as well as

9

criminal defendants, "while retaining the usefulness of civil forfeitures in law enforcement activities").

*United States v. Real Prop. & Residence located at 4816 Chaffey Lane*, 699 F.3d 956, 961 (6th Cir. 2012). *See also* Rule G(7)(a) (Admiralty Rules).

If for some reason, the court believes that the stay bars the entry of an Order, or conducting a hearing on the Claimants' modest request, then the Claimants will file a motion for relief from the stay.

                                      RESPECTFULLY SUBMITTED,

                                      /s/ *Donald F. Samuel*
                                      DONALD F. SAMUEL
                                      *Counsel for James Shaw*
                                      Georgia Bar No. 624475

GARLAND, SAMUEL & LOEB, P.C.
3151 Maple Drive, N.E.
Atlanta, Georgia 30305

                                      /s/ *Michael Brown*
                                      MICHAEL BROWN
                                      *Counsel for Tyson Rhame*
                                      Georgia Bar No. 088875

ALSTON & BIRD
1201 West Peachtree Street
Atlanta, GA 30309

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | 1:15-CV-2677-LMM |
| APPROXIMATELY 8,671,456,050 ) | |
| IN IRAQI DINAR, et al. ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date served the within and foregoing **REPLY OF CLAIMANTS RHAME AND SHAW TO GOVERNMENT'S RESPONSE TO CLAIMANTS' MOTION FOR USE OF SEIZED FUNDS TO PAY OFF MORTGAGE ON SEIZED PROPERTY** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

This the 31st day of May, 2016.

/s/ *Donald F. Samuel*
DONALD F. SAMUEL
Georgia Bar No. 624475

11